IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TARLTON JAY FISHER, | : | |
| Petitioner, | : | |
| v. | | CRIMINAL NO. 07-00288-KD-N |
| | : | |
| | | CIVIL ACTION NO. 09-00815-KD |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

<u>REPORT AND RECOMMENDATION</u>

Pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 (Doc. 133), Petitioner's Memorandum in Support thereof (Doc. 133-1), the Government's Response in Opposition thereto (Doc. 134), and Petitioner's Reply (Doc. 136). This action was referred to the Undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[1]  Because the record is adequate to dispose of this matter, no evidentiary hearing is required.  Having carefully reviewed the record, it is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 (Doc. 133)

_____

[1] The Honorable United States District Judge Kristi K. DuBose presided over the proceedings in this action and imposed the challenged sentence.  On December 10, 2010, Judge DuBose referred the matter to the undersigned Magistrate Judge for entry of a Report and Recommendation.  The undersigned has reviewed Petitioner's motion and related documents, the transcripts of the guilty plea hearing and the sentencing hearing, and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge BuBose. Based upon that review, the undersigned makes the following report and recommendation.

be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Tarlton Jay Fisher.

## I. BACKGROUND

On August 31, 2007, Tarlton J. Fisher was indicted for violating 21 U.S.C. §846, conspiracy to possess with intent to distribute more than 500 grams of a mixture and substance containing methamphetamine (Count One); for violating 21 U.S.C. §841(a)(1), possession with intent to distribute approximately 5 grams of methamphetamine  (Count Two); for violating 21 U.S.C. §802, possession of a firearm by an unlawful user of a controlled substance (Count 6); and under 18 U.S.C. § 924(d) and 28 U.S.C. §2461 (c), forfeiture of firearms (Count Seven). (Doc. 1).  On or about September 26, 2007, Christopher Knight of the Office of the Federal Defender was appointed to represent Fisher.  (Doc. 22).

On October 10, 2007, Fisher, through his appointed counsel, filed a motion to suppress "any evidence, including the alleged 34 firearms, seized from his home on or about November 23, 2005, after police entered his home ostensibly with a search warrant."  (Doc. 30, p.1).  In his seven page motion, Fisher argued that the drugs, "approximately 5 grams" of methamphetamine, and firearms were not within the scope of the search warrant and were not in plain view.  (Doc. 30, pp. 3-5).

On October 15, 2007, the Court entered a Pretrial Conference Order reflecting that Fisher intended to plead guilty to Count One of the indictment.  (Doc. 36).  The Court found that Fisher's Motion to Suppress was thus moot.  (Docs. 36 and 37).  A Plea Agreement was filed on October 18, 2007, in which Fisher agreed to plead guilty to Count One of the indictment, conspiracy to possess with intent to distribute more than 500 grams of a mixture and substance containing methamphetamine.  (Doc. 42, pp.1-2).  Fisher also agreed that he would not contest

the forfeiture of certain firearms sought in Count Seven of the indictment.  (Doc. 42, p.2).  Fisher

pled guilty as agreed on November 2, 2007. (Doc. 45).

     At the conclusion of Fisher's sentencing hearing, which was conducted on March 27,

2008, United States District Judge DuBose sentenced him to 262 months in prison on Count One

and five years of supervised release.  (Doc. 95 at pp. 214-15).  She also ordered that he be

allowed to participate in residential, comprehensive substance abuse treatment.  Id.  Judgment

was so entered on April 15, 2008.  (Doc. 85).

     On April 15, 2008, Fisher's counsel filed a Notice of Appeal on his behalf.  (Doc. 88).

On appeal, Fisher argued that "the district court erroneously classified the drugs attributed to him

as 'ice' instead of methamphetamine, for sentencing purposes."  United States v. Fisher, 319 F.

App'x 795, 796 (11th Cir. 2009).[2]  On April 16, 2009, the Eleventh Circuit Court of Appeals

affirmed Fisher's sentence, finding no merit to his claims.  (Doc. 127).

     Subsequently, on December 15, 2009, Fisher filed a Motion to Vacate, Set Aside, or

Correct Sentence under 28 U.S.C. §2255.  (Doc. 128).  On December 21, 2009, the Government

field a brief in opposition to Fisher's motion.  (Doc. 130).  Because of insufficiencies in his

original motion, Fisher filed a motion to amend or correct his motion to vacate on April 19,

2010.  (Doc. 131).  The Court granted his motion to amend on April 19, 2010, noting that the

amended motion would supersede his original filing.  Fisher filed an Amended Motion to Vacate,

Set Aside, or Correct Sentence under 28 U.S.C. §2255 on December 10, 2010.  (Doc. 133).

Fisher raised the following three grounds in support of his motion: (1) ineffective assistance of

---

[2] Under the sentencing guidelines, "methamphetamine (actual)," which refers to pure or uncut
methamphetamine, and "ice," which refers to a mixture or substance containing
methamphetamine of at least 80% purity, are treated more harshly than a mixture or substance
containing methamphetamine that is less than 80% pure.  See Fisher,  319 F. App'x 795, 796 n.
1; U.S.S.G. §2D1.1.

trial counsel for failing to oppose the use of drugs that were different than those seized from his shop in determining the purity of the drugs involved in the conspiracy; (2) ineffective assistance of trial counsel for failing to oppose the use of drugs that were outside the conspiracy to determine the purity of the drugs involved in the conspiracy; and (3) ineffective assistance of trial counsel for failing to file a motion to suppress the drugs found in his couch on the basis that they were outside the scope of the search warrant.  (Doc. 133, pp. 4-5).

On December 13, 2010, the Government filed a response in opposition to the Motion to Vacate arguing that Fisher's first two grounds are without merit and that Fisher's third ground was waived.  (Doc. 134).  On January 3, 2011 Fisher filed a reply to the Government's response, reasserting the merits of his motion.  (Doc. 136).  The motion is now ripe for the Court's consideration.

## II. DISCUSSION

A. <u>Grounds One and Two:  Trial Counsel's Failure to Object to Government's Evidence Concerning Drug Purity Determination</u>.

Fisher argues in his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 that his trial counsel was ineffective because counsel failed to object to the use of drugs that were not seized from Fisher's property or, in the alternative, drugs that were outside the conspiracy to determine drug purity for sentencing purposes.  (Doc. 133, pp. 4-5; Doc. 133-1, pp. 1-6).

In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. The court announced the now-familiar two-pronged test: a defendant claiming ineffective assistance of counsel must show (1) "that counsel's representation fell below an objective standard of reasonableness," <u>id.</u> at 688, and (2) that counsel's deficient performance prejudiced the defendant.  <u>Id.</u> at 687.  Both prongs of the test must be satisfied for a habeas petitioner to

succeed on a claim of ineffective assistance of counsel.  Id.; Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

The first prong of Strickland requires "a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment."  Butcher, 368 F.3d at 1293 (citing Strickland, 466 U.S. at 687-89).  With regard to the evaluation of counsel's performance, the Strickland court held:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  See Michel v. Louisiana, supra, 350 U.S., at 101, 76 S. Ct., at 164.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland, 466 U.S. at 689.  The Eleventh Circuit has noted that "[t]here is a strong presumption that counsel's performance was reasonable and adequate," Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005), and this presumption is even stronger when the court is "reviewing the performance of an experienced trial counsel."  Id.; (citing Callahan v. Campbell, 427 F.3d 897, 933 (11th Cir. 2005)).

The second prong "requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Butcher, 368 F.3d at 1293 (citing Strickland, 466 U.S. at 687-89).  "To establish prejudice, a petitioner must show 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. '"

Id. (quoting Strickland, 466 U.S. at 694).

Because a petitioner must make both showings to succeed, "once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been." Id. (citing Strickland, 466 U.S. at 697). "If a [petitioner] cannot satisfy the prejudice prong, the court need not address the performance prong." Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998).

Fisher argues that his counsel was ineffective because he failed to object to the Government's use of laboratory test results of drugs that he argues were not found at his residence. In support of his argument, Fisher contends that the results from the DEA laboratory that the Government relied upon in setting the sentencing guidelines were based upon an analysis of drugs that were not found at his residence. He believes this to be so because the DEA laboratory report stated that 5.6 grams of drugs were tested, while the report from the Alabama Department of Forensic Sciences stated that 4.0 grams of drugs were tested.[3] (Doc. 133-1 at p. 1-2). Fisher also argues that his counsel was ineffective because he failed to object to the use of drugs found between the cushions of a couch in his shop to determine his sentencing range. (Id. at p. 5-6). Fisher contends that his counsel knew that his alleged coconspirator had acknowledged that the drugs were hers. The report from the DEA laboratory reflected that the drugs seized from Fisher's shop were 91.7% pure.

Fisher argues here, and previously argued on direct appeal to the Eleventh Circuit, that his

---

[3] The reports submitted by Fisher in support of the instant motion show that the Alabama Department of Forensic Sciences was provided "one plastic packet containing three plastic zip-lock bags each containing crystalline material," that the contents of only two of the bags were analyzed, and that the total amount analyzed was 4.0 grams. (Doc. 133-1 at Ex. A). At the sentencing hearing, Special Agent Ronald Peterson testified that, because the Alabama Department of Forensic Sciences was not capable at that time of determining drug purity, the drugs recovered from Fisher's shop were submitted to the DEA lab. (Doc. 95 at p. 162-63). Peterson also testified that the weight of the drugs submitted was 5.6 grams. (Id. at p. 182).

21

sentence was improper because the  Government used these improperly admitted drug amounts

and purity levels  in the presentence investigation report and at the sentencing hearing to

determine the sentencing guidelines.  Specifically, he argues that the district court erroneously

determined that the drugs attributed to him were "ice" and not regular methamphetamine when

setting the guideline range of his sentence.  He contends that the district court should have used

the lesser guideline range for "regular meth" in determining his sentence.

    The Eleventh Circuit addressed the guidelines issue raised by Fisher on direct appeal, in

pertinent part, as follows:

    In cases involving disputed guidelines issues, we have invited lower courts to state on the
record whether they would have imposed the same sentence even if they have decided the
guidelines issue incorrectly.  United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006).  If a
district court makes such a statement, we will uphold the sentence as long as it is reasonable
under the 18 U.S.C. §3553(a) factors; and in determining whether a sentence is reasonable, we
assume that the district court decided the guidelines issue incorrectly and that the advisory
guidelines range should be reduced accordingly.  Id.

    Here, because the district court stated that it would impose the same sentence even if it had
made a guidelines calculation error about the quality of the drugs involved, we review Fisher's
ultimate sentence for reasonableness.  And we assume that the district court concluded
incorrectly that the methamphetamine attributable to Fisher was "ice."  So Fisher's advisory
guidelines range should be reduced from 210 to 262 months' imprisonment to 135 to 168
months' imprisonment.  See U.S.S.G. §2D1.1(c)(1), (3).  (footnote omitted).

…

    ***We conclude that, even if the district court erred in its drug purity determination,
Fisher's ultimate sentence is reasonable.***  Although his sentence varied upward from the
correctly calculated advisory guidelines range by 94 months, it was well below the statutory
maximum of life imprisonment that he faced.  See 21 U.S.C. §841(b)(1)(A); United States v.
Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005)(comparing, as one indication of reasonableness,
the actual prison term imposed against the statutory maximum).  In addition, the district court
stated that the sentence was appropriate because of Fisher's disrespect for the law and the need to
protect the public from his violent conduct.  Furthermore, the court noted that it would have
imposed the same 262-month sentence, no matter a guideline calculation error, based on Fisher's
violent nature and his history.

    Based on the evidence in the record - including the sentencing testimony of 15 witnesses
about the extensiveness of Fisher's drug operation and his violent tendencies - we conclude that

21

the district court justified an upwardly variant sentence.  See Gall, 128 S. Ct. at 597 (explaining that a sentencing judge "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance").  Fisher, on many occasions, resorted to violence to further his drug activities, including shooting into houses of those who had failed to pay him for drugs.  He also harassed a police officer assigned to investigate his drug activities, possessed contraband items in his prison cell after his arrest, and threatened to beat up a corrections officer.  Thus, several section 3553(a) factors - including Fisher's history of violence, promoting respect for the law, and protecting the public from Fisher - warranted an above-guidelines sentence.  See §3553(a)(1), (2)(A), (C).

Fisher, 319 F. App'x at 796-98 (emphasis added).

Under the law of the case doctrine, this court is bound by findings of fact and conclusions of law made by the Eleventh Circuit in the direct appeal of this case unless one of the following exceptions applies: "(1) new evidence is presented, (2) there has been an intervening change in controlling law, or (3) the prior appellate decision is clearly erroneous and would result in manifest injustice if implemented."  United States v. Lynn, 385 F. App'x. 962, 965 (11th Cir. 2010)(citing Litman v. Mass. Mut. Life Ins. Co., 825 F.2d 1506, 1510 (11th Cir. 1987)(en banc).  Pursuant to this doctrine, any claim by Fisher that his sentence was excessive is barred from reconsideration, even if couched as a claim of ineffective assistance of counsel, unless one of the above exceptions applies.  See United States v. Hinton, 2010 WL 5071050, *6 (S.D. Ala. 2010).  No new evidence has been presented nor has there been an intervening change in controlling law, thus, this court must only consider whether the Eleventh Circuit's decision was clearly erroneous and would result in manifest injustice if implemented.

The Eleventh Circuit correctly recognized that, in compliance with United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006), the district court in this case stated on the record that it would impose the same sentence even if it had made a guidelines calculation error about the quality of the drugs involved.  Fisher, 319 F. App'x at 796-97.  The Eleventh Circuit then reviewed the sentence for reasonableness.  Id.; see Keene, 470 F.3d at 1349.  In so doing, the

21

Court assumed that the district court had erred in finding that the methamphetamine attributable to Fisher was "ice" and thus assumed that the guidelines advisory range should have been reduced from 210 to 262 months to 135 to 168 months.  Id.  Based on the evidence in the record, including the testimony of fifteen witnesses about the extensiveness of Fisher's drug operation and his violent tendencies, the Eleventh Circuit concluded that Fisher's sentence was reasonable. Id. at 797-98.    This court can find no error or manifest injustice in the Circuit court's decision.

Even if the Eleventh Circuit had not considered the propriety of Fisher's sentence, he still could not prevail on his motion based on the first two grounds.  In order to prevail on an ineffective assistance of counsel claim, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Fisher's first two claims are based on his allegation that his attorney failed to object to evidence relating to the purity of the drugs attributed to him which he argues led to the court using the higher guideline range for "ice," instead of the guideline range for "regular meth" in determining his sentence.  However, the district court specifically stated that it would have imposed the same sentence even if the guideline range had been improperly calculated.  (Doc. 95 at 214).

There was extensive evidence in the record that justified an upward departure from the guideline range.  Many witnesses, including Fisher's ex-wife, law enforcement officials, and acquaintances,  testified at Fisher's sentencing hearing about violent acts he had committed against them and about his general reputation in the community of being a violent person.  (Doc. 95).  Fisher's violent acts ranged from domestic abuse of his wife to shooting into the house of someone who owed him money for drugs to harassing a police officer assigned to investigate his drug activities.  Id.  These witnesses and others also testified about the extensiveness of his drug

21

operation, as well as his extensive use of drugs.  Id.  There was also testimony that his behavior did not change after he was jailed; specifically, there was testimony that he possessed contraband items in his prison cell after his arrest and threatened to beat up a corrections officer.  Id.  The district court determined that a sentence of 262 months was warranted in this case to protect the public from Fisher and to promote respect for the law.  It should also be noted that the sentence of 262 months is far below the statutory  maximum of life imprisonment that he faced.

Based on the foregoing, Fisher has not met his burden of showing that his counsel's alleged ineffectiveness prejudiced him.  As discussed above, if Fisher cannot satisfy the prejudice prong, he cannot prevail on his motion, and an analysis of the performance prong is not necessary.[4]  Accordingly, grounds one and two of Fisher's habeas petition to vacate, correct, or

---

[4] Even though this court declines to conduct a lengthy analysis of whether Fisher's counsel's representation fell below an objective standard of reasonableness, the court notes that, contrary to Fisher's assertions, his counsel did object to the characterization of the drugs as "ice."  On October 10, 2007, Fisher's counsel filed a motion to suppress the drugs on the grounds that they were illegally seized because they were not within the scope of the search warrant and were not in plain view.  (Doc. 30).  This motion was found by the district court to be moot after Fisher pled guilty.  (Docs. 36 and 37).  On October 8, 2008, Fisher's counsel filed Defendant's Position Regarding Sentencing Factors in which he objected to the characterization of the type of drug being "methamphetamine actual or ice," objected to the base offense level based on this characterization, and stated that the sentencing guideline range should be 135-168 months.  (Doc. 64).  Moreover, counsel objected at the sentencing hearing to the Government's characterization of the drug type, and the district court acknowledged at the beginning of the hearing that the Government had the burden to show that it was ice and not a mixture.  (Doc. 95 at pp. 4-8).  Fisher's counsel then raised his objection to the type of drug at the conclusion of the hearing.  The Court then recited the evidence it had heard concerning drug type:

> Now, as far as the amount of drugs, it's my finding, based on the testimony of Melissa Stowe, that he's sold 56 grams of ICE.
>
> * * *
>
> As to James Legrone, I find him credible that he was buying, he said one to two ounces - - actually, he said one to five ounces.  I'm giving him the benefit of the doubt there was one ounce per week for a five month period and he said on one occasion he bought five ounces.  To add that to it would be 1.2 kilograms.

21

set aside his sentence are without merit.

B.  Ground Three:  Trial Counsel's Failure to File a Motion to Suppress Drugs

The third ground upon which Fisher bases his claim for habeas relief is his assertion that his attorney was ineffective because he failed to file a motion to suppress the drugs found in the couch in his shop on the ground that those drugs were outside the scope of the search warrant. Fisher's claim fails both because it is factually incorrect, as well as legally barred.

As noted above, Fisher's counsel filed a motion to suppress on October 10, 2007, seeking to suppress the introduction of both the drugs and firearms found on his premises on the ground that they were outside the scope of the warrant.  (Doc. 30).  On October 15, 2007, the motion to suppress was deemed to be moot because Fisher pled guilty to the drug charges and agreed to forfeiture of the firearms.  Thus, this court cannot find counsel to be ineffective when he, in fact, filed the motion to suppress that Fisher sought.

Even if counsel had not filed the motion to suppress, Fisher's claim would be legally barred.  Fisher waived any such claim when he entered a knowing, voluntary, and counseled plea

---

> He also mentioned that was ICE.  I find by a preponderance of the evidence that it was meth, ICE.  Search warrants yielded five and a half grams of meth, ICE.
>
> Cindy Montgomery's testimony would indicate, she said two ounces at least once a week for approximately a few, more or less, [sic] which taking the low end of all that is two ounces for one week for three months would be twenty-four ounces, which calculates out to 672 grams.
>
> If my calculations are right, that would be 1.9 kilos of meth, ICE.
>
> It's the finding of the Court he's responsible for 1.9 kilos of meth, ICE.

(Doc. 95 at pp. 204-05).   After the court stated its finding, counsel objected to the court's characterization of the drugs as ICE, but the court upheld its ruling.  (Id. at pp. 206-07).  In his petition, Fisher has not explained how these actions of counsel were not reasonable.

21

of guilty.  "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."  Bousley v. United States, 523 U.S. 614, 621 (1998)(quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)).  "[A] voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant."  United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), quoted in Washington v. United States, 2010 WL 3338867, *15 (S.D. Ala. 2010); accord United States v. Byrd, 166 F. App'x 460, 461-62 (11th Cir. 2006).  "A district court's refusal to suppress evidence is nonjurisdictional and is waived by a guilty plea."  Byrd, 166 F. App'x at 462.  Claims of ineffective assistance of counsel that are based on the failure of a motion to suppress are also waived "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary."  Id. (quoting Glinsey, 209 F.3d at 392); see also Franklin v. United States, 589 F.2d 192, 194-95 (5th Cir. 1979)[5] ("By entering a knowing, voluntary, intelligent guilty plea on the advice of competent counsel, [Petitioner] has waived all nonjurisdictional complaints. . . [such as] claims regarding Miranda warnings, coerced confessions, perjury and illegal searches and seizures . . . .").  Thus, Fisher's claim of ineffective assistance of counsel for allegedly failing to file a motion to suppress the drugs found on his premises on the ground that they were outside the scope of the warrant is waived unless his guilty plea was unknowing, involuntary, and unintelligently given.

A plea of guilty is considered voluntary if it was "entered by one fully aware of the direct consequences of the plea," and not induced by threats, misrepresentation, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business."  Bousley,

---

[5]  See Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

523 U.S. at 619 (citations and internal quotation marks omitted).  A plea is intelligent in a constitutional sense if a defendant received "real notice of the true nature of the charge against him." Id. at 618 (citations and internal quotation marks omitted).  If the defendant "was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him," his plea was entered intelligently even if at the time of the plea, he "did not correctly assess every relevant factor entering into his decision." Id.  at 619 (citations and internal quotation marks omitted).

On October 18, 2007, Fisher signed a standard Plea Agreement.  (Doc. 42).  In that agreement, he acknowledged that he understood his rights to be represented by an attorney, to plead not guilty, to have a trial by impartial jury, to confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense, and to not be compelled to incriminate himself.  (Id. at ¶ 1).  He agreed to waive these rights and to plead guilty to conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine.  (Id. at ¶ 2).  Fisher agreed that he was not under the influence of alcohol, drugs, or narcotics and that he was certain that he was in full possession of his senses and mentally competent to understand the Plea Agreement and the guilty plea hearing.  (Id. at ¶ 4).  He acknowledged that he had the benefit of legal counsel in negotiating the Plea Agreement, that he had discussed the facts of the case with his attorney, and that his attorney explained to him the essential legal elements of the criminal charges which had been brought against him and his understanding of the United States's evidence.  (Id. at ¶ 5).  Fisher stated that he believed that his attorney had represented him faithfully, skillfully, and diligently, and that he was completely satisfied with the legal advice of his attorney.  (Id. at ¶ 6).  He agreed that his plea was freely and voluntarily made and was not the result of force, threats, promises, or representations  apart from

21

those set forth in the Agreement and that there had been no promises from anyone as to the particular sentence the court would impose.  (Id. at ¶ 8).  The Agreement stated that the maximum period of imprisonment the court could impose was 10 years to life.  (Id. at ¶ 9).  The Agreement also stated that the United States Sentencing Guidelines would apply, and Fisher acknowledged that he had reviewed the guidelines with his attorney and understood that no one could predict with certainty what the sentencing range would be until after the pre-sentence investigation had been completed and the court had ruled on the results of the investigation.  (Id. at ¶ 10).  He also stated that he understood that, at sentencing, the court might not necessarily sentence him in accordance with the guidelines, that the Plea Agreement did not create any right to be sentenced in accordance with the guidelines, and that determination of the sentencing range, guideline level, and actual sentence imposed was solely the discretion of the court.  (Id.).

On October 19, 2007, Fisher appeared at his guilty plea hearing.  He testified that he was 43 years old, that he had completed the twelfth grade, that he could read, write and understand the English language, that he had never been treated for any type of mental illness or drug addiction, and that he was not currently under the influence of alcohol, drugs, or medication.  (Doc. 94 at pp. 2-3).  Fisher also testified, in relevant part, as follows:

Q.  Have you gone over the indictment with your attorney?

A.  Yes, ma'am.

Q.  You understand what the government's charging you with?

A.  Yes, ma'am.

Q.  Are you fully satisfied with the advice, representation given to you by your attorney?

A.  Yes, ma'am.

Q.  Did you read this plea agreement before you signed it?

21

A.  Pretty much, yeah.

Q.  You went over it fully with your attorney?

A.  Yes, ma'am.

Q.  The way I understand your plea agreement is that in return for your guilty plea to Count One the government will dismiss the remaining counts.  And also your agreement to the forfeiture, the government will dismiss the remaining count.  They will recommend you be sentenced at the low end of the guidelines or they are going to ask for a downward departure if you substantially assist them.  Is that the way you understand it?

A.  Yes, ma'am.

Q.  Do you also understand that you are waiving your right to appeal the sentence?

A.  Right.

Q.  You are waiving your right, unless I go beyond the guidelines or go beyond the statutory maximum.  You understand that?

A.  Yes, ma'am.

* * *

Q.  Everything that you have been promised is included in that written plea agreement, right?  Yes, no, which one?

A.  Yeah.

* * *

THE COURT:  All right.  And you understand the recommendations made by this plea agreement is [sic] just recommendations and I don't have to follow it?

A.  Yes, ma'am.

Q.  All right.  Now, you understand you are pleading guilty to a felony offense.  You are going to lose the right to vote, the right to hold public office and the right to have a firearm?

A.  Yes, ma'am.

Q.  Your maximum possible penalties, there is a ten-year to life, $4 million fine, five years supervised release and a hundred dollars special assessment.  You understand those are the maximum possible penalties?

21

A.  Yes, ma'am.

Q.  You understand when I say ten years, that's the mandatory minimum that Congress has set and I cannot go below that mandatory minimum unless the government asked me to.  You understand that?

A.  Yes, ma'am.

* * *

THE COURT:  All right.  What I'm saying to you is, you can come in here on your day of sentencing and say don't give me ten years.  But you have to understand, I cannot help you in that regard.  The only person that can help you is yourself and providing substantial assistance to the government.  You understand?

A.  Yes, ma'am.

Q.  I'm not saying that is what I think you should do, I'm just telling you that is the only way that it's possible to go below a mandatory minimum.

A.  Yes, ma'am.

Q.  Okay.  Now, we do have sentencing guidelines in this case and have you gone over those with your attorney?

A.  Yes, ma'am.

Q.  You understand that they are just advisory and I don't have to follow them?

A.  Yes, ma'am.

Q.  Also we are not going to know what they are until we have done a full background check of you?

A.  Yes, ma'am.

Q.  You have a right to plead not guilty and we will go to trial.  You would be presumed innocent.  The government would have to prove your guilt beyond a reasonable doubt.  You would have the right to assistance of counsel.  The right to cross-examine the government's witnesses.  The right to put your own witnesses on as well the right to choose to testify or not to testify.  Those are your constitutional rights.  But by pleading guilt today you are giving up those rights.  You understand that?

A.  Yes, ma'am.

21

Q.  Is that what you want to do?

A.  Yes, ma'am.

(Doc. 94 at pp.  3-4, 9-12).

The government then provided the court a statement of the facts that it would rely upon at

trial to support the charge of conspiracy to possess with intent to distribute methamphetamine.

The court's questioning of Fisher then continued:

THE COURT:  Do you agree the government could prove those facts against you?

A.  Yes, ma'am.

THE COURT:  Okay.  You have also, I believe, signed a factual resume, which includes
additional facts.  Did you go over that with your attorney before you signed it?

A.  Yes, ma'am.

THE COURT:  You agree they could also prove those additional facts?

A.  Yes, ma'am.

THE COURT:  How do you plead?

A.  Guilty.

THE COURT:  It's the finding of the Court … [that] the defendant is fully competent and
capable of entering an informed plea, that the defendant is aware of the nature of the
charges and the consequences of the plea.  That the plea of guilty is a knowing and
voluntarily [sic] plea supported by independent basis in fact containing each of the
essential elements of the offense.  The plea is therefore accepted.  And the defendant is
now adjudicated guilty of the offense.

(Doc. 94 at pp.  13-14).

"There is a strong presumption that the statements made during the [guilty plea] colloquy

are true."  United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).  "[W]hen a defendant

makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements

21

were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).  Moreover, a

defendant's representations regarding the voluntary nature of his plea "constitute a formidable

barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a

strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

Fisher argues in his memorandum in support of his motion that his guilty plea was not

knowingly, voluntarily, or intelligently given because his attorney was ineffective in failing to

file a motion to suppress the drugs found in the couch in his shop.  As discussed above, this

argument is factually incorrect.  The record clearly demonstrates that Fisher's counsel did file a

motion to suppress those drugs.  The motion was deemed moot when Fisher pled guilty.  Both

the factual resume attached to the written Plea Agreement and the government's recitation of the

facts that would be introduced at trial informed Fisher that the government was relying, in part,

on these drugs to prove its case.  At the guilty plea hearing, Fisher stated that the facts set forth in

the factual resume and by the government orally at the hearing were true.  A review of the record

clearly demonstrates that Fisher's guilty plea was free of coercion, that Fisher understood the

nature of the charges against him, and that Fisher was aware of the direct consequences of the

guilty plea.  See United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003).  Because the

court finds that Fisher's guilty plea was knowingly, voluntarily, and intelligently given,[6] the third

ground for habeas relief also fails.

### III.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing §2255 Proceedings, the Undersigned

---

[6] The court notes that, at the time of the guilty plea, Fisher was a forty-three year old, educated
man who by his own account "was a successful business man of some 25-years, . . . a father, and
a good provider."  (Doc. 136 at p. 3).  There is nothing in the record that would indicate an
inability on his part to understand either the Plea Agreement or the events that occurred at the
plea hearing.

recommends that a certificate of appealability in this case be denied.  28 U.S.C.A. foll. §2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  28 U.S.C. A. §2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.A. §2253(c)(2).  Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id. ("To obtain a COA under §2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

None of Fisher's claims warrant the issuance of a Certificate of Appealability.  For the reasons discussed above, the first two grounds relied upon by Fisher in support of his motion are

clearly without merit.  Fisher cannot demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  As discussed above, Fisher's guilty plea on the conspiracy to distribute methamphetamine charge waived the ineffective assistance of counsel claim set forth in ground three of his claim.  Under the circumstances, a reasonable jurist could not conclude that this Court is in error in invoking this procedural bar with respect to the third ground.  See Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").  In addition, reasonable jurists could not debate whether any of Fisher's claims should be resolved in a different manner or were adequate to deserve encouragement to proceed further on the merits.  The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented.  It is thus recommended that the Court deny any request for a Certificate of Appealability.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 (Doc. 133) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Tarlton Jay Fisher.  In addition, the Undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability.  It is so recommended.

The instructions which follow the Undersigned's signature contain important

information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this  30th  day of November, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. §636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. §636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[7] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. §1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this   30th   day of November, 2012.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[7] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).